UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
DEC 31 2007

| | | |
|---|---|---|
| KRISTINE BALTZER, | ) | |
| PLAINTIFF, | ) | 07-4194 |
| VS | ) | **COMPLAINT** |
| CHRIS CAM CORP. d/b/a HEARTLAND PAPER COMPANY, INC., | ) ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1) This is an employment discrimination and retaliation action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq* and 42 USCA 1981.

(2) This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

(3) Plaintiff Kristine Baltzer ("Baltzer") is a resident of Sioux Falls, South Dakota.

(4) Baltzer was an employee of the Defendant Chris Cam Corp. d/b/a Heartland Paper Company, Inc. ("Heartland") in its office in Sioux Falls, South Dakota.

(5) Baltzer timely filed her Charge of Discrimination with the South Dakota Division of Human Rights on June 29, 2007 and received a Notice of Right to Sue from the EEOC on December 3, 2007.

## FACTS

(6) Baltzer is a Native American woman.

(7) Baltzer began employment with Heartland in its Customer Service Department in June 2006.

(8) To the best of her knowledge, Baltzer is the only Native American employed by the Defendant.

(9) Prior to April 11, 2007, Baltzer had received no written or oral warnings about her work performance.

(10) In March 2007, Baltzer's performance met expectations to the point that she applied for and received a promotion to a position in Heartland's Accounting Department.

(11) On April 10, 2007 Credit Manager Alyce Tounsley ("Tounsley"), Tounsley approached Baltzer at Baltzer's new desk in the Accounting Department and asked Baltzer, "So what race are you?"

(12) When Baltzer told Tounsley that she was part Native American, Tounsley "warned" Baltzer that she did not like having to deal with "mother fucking Indians" and made several other offensive, discriminatory remarks about Native American people to Baltzer, including the following:

   a) Tounsley stated that she believes "those 'Rez Indians are idiots";

   b) Tounsley generically referred to Native American as "stupid Indians";

2

c) Tounsley expressed that she believes that Native Americans "have no idea how to run a business";

d) Tounsley expressed that Native Americans are "goddamn idiots";

e) Tounsley asked Baltzer which of her parents was Native American and if Baltzer's father was "the white one";

f) Tounsley asked Baltzer where her family was from by asking, "I mean, what rez?"

(13) Baltzer responded to Tounsley's "warning" and offensive remarks by saying she did not how to react since she had never worked in that sort of environment before.

(14) Another employee, Senior Collector Chad Jungemann, was present during these remarks by Tounsley and seemed to concur with them.

(15) After her conversation with Tounsley, Baltzer went on a coffee break and was never allowed to return to the Accounting Department for the rest of her employment.

(16) On April 11, 2007, the day after Tounsley learned that Balzter was a Native American, Baltzer's supervisor Kevin Clouse and Tounsley presented Baltzer with a document that indicated that Baltzer was being placed on a final warning for alleged unexcused absences.

(17) Baltzer disputed that she had ever had an unexcused absence and pointed out that she had never even had a disciplinary warning.

(18) Klouse instructed Baltzer to sign the final warning document or her refusal to sign it would be considered a resignation.

3

(19) After Baltzer signed the final warning document as directed, Klouse informed Baltzer that she was also on an unpaid suspension, effective immediately, until April 13, 2007.

(20) Baltzer was placed on the unpaid suspension based on Tounsley's recommendation.

(21) To the best of Baltzer's knowledge, non-Native American employees who were treated better than Baltzer in terms of leave, attendance and discipline.

(22) On April 13, 2007 when she returned to work, Baltzer reported Tounsley's discriminatory remarks to Sandra Christenson who is the co-owner, President and Vice President of Human Resources at Heartland. Baltzer also complained to Christenson that she believed that her race was a primary motivation for the written disciplinary action and suspension she had received from Tounsley and Klouse.

(23) On April 16, 2007 Christenson met with Tounsley to discuss Baltzer's allegations and Tounsley admitted making the comments that Baltzer had reported.

(24) Tounsley admitted to Christenson that Chad Jungemann had also joined with her in making similar comments about some of Heartland's "frustrating" Native American customers.

(25) Christenson told Tounsley that she would have to be demoted for 90 days and take sensitivity training classes as a result of her racially offensive remarks. However Tounsely was never actually demoted or required to take sensitivity training classes.

(26) On April 17, 2007 Tounsley declined to accept the discipline and instead submitted her resignation with a one-month's notice.

4

(27) On April 17, 2007, after being informed that he would have to treat all customers in a non-discriminatory fashion, Jungemann also submitted his resignation.

(28) On April 19, 2007, Christenson instructed Baltzer that she could not go upstairs where the Accounting Department was located in the workplace because it was "unstable" and "unsafe" for Baltzer to be upstairs after Tounsley "did not take the conversation of her comments as well as [Christenson] hoped she would."

(29) On April 19, 2007, Christenson told Baltzer that Christenson could not "promise that there will be no retaliation" because Tounsley was so angry. Christenson told Baltzer that she did not know if Baltzer needed to be afraid of physical retaliation.

(30) On April 19, 2007, Christenson informed Baltzer that the offer to promote Baltzer to the accounting job was rescinded and Baltzer would be returned to her former Customer Service position.

(31) Christenson instructed Baltzer to tell other employees about her demotion as if Baltzer had declined the promotion to the Accounting Department position.

(32) Baltzer did not want to be demoted and never received her promotion to the Accounting Department.

(33) Neither Jungemann or Tounsley were subject to any actual disciplinary action as a result of admitting to making racially discriminatory and offensive remarks.

(34) Both Jungemann and Tounsley were allowed a one-month period before their resignations were in effect during which they continued with the same positions, pay and authority.

(35) During the rest of Baltzer's employment at Heartland, Tounsley was permitted to be openly hostile and disdainful toward Baltzer because of her race.

(36) After Baltzer reported Tounsley's discriminatory comments, Baltzer was physically limited from going upstairs in the business where the Accounting Department was located.

(37) After Baltzer reported Tounsley's discriminatory comments and was demoted back to her Customer Service position, Baltzer received fewer customer service work assignments and was unable to complete any customer service tasks that required involvement from the Accounting Department unless Baltzer's supervisor would agree to intercede and take the task to the Accounting Department himself.

(38) After Baltzer reported Tounsley's discriminatory comments, Baltzer was ostracized and excluded from work-related events by co-workers and managers who sided with Tounsley.

(39) On April 23, 2007, it was announced in front of Baltzer that that "management" was taking Tounsley out to lunch to "cheer" Tounsley up about her upcoming resignation.

(40) On May 4, 2007, Baltzer's supervisor instructed Baltzer she was being assigned to train another employee, Pennee Whitman, to take over her Customer Service position. Whitman reacted to this announcement by remarking in Baltzer's presence that another non-minority co-employee's "Indian name" should be "Shelia Runs With Knife."

(41) On May 8, 2007, Baltzer reported to Office Services Manager Blake Johnson that she felt that she was the target of racial discrimination because of the ongoing racial comments in the workplace, her limited work assignments, the physical limitations imposed on where she could go in the workplace and the retaliatory treatment and disciplinary action by Klouse, Tounsley and Christenson.

6

(42) Johnson instructed Baltzer that she should not suggest that Christenson was retaliating and that he did not think that was possible.

(43) Three days after her meeting with Johnson, on May 11, 2007, Christenson called Baltzer into a meeting and told Baltzer that she did not think Baltzer's employment was "working out" and stated, "I am terminating you."

(44) Christenson told Baltzer that if Baltzer did not sign a document indicating that she had been late for work on a previous day, she would be fired for insubordination.

(45) Balzter had not been late for work and informed Christenson that she would not falsely acknowledge that she had been late for work.

(46) Christenson terminated Baltzer on May 11, 2007.

(47) Baltzer was replaced by a non-minority after she was terminated.

(48) Tounsley and Jungemann, who are not minorities, continued to work for Heartland after Baltzer was terminated.

<u>COUNT ONE:</u>
42 USCA 2000e-2(a); 42 USCA 1981
Racial Discrimination

(49) Baltzer realleges paragraphs 1 through 48 of the Complaint herein.

(50) Baltzer's race was a motivating factor in her suspension, demotion, limited work assignments and termination and the other adverse and unequal treatment Baltzer received with respect to the terms and conditions of her employment at Heartland.

(51) Other similarly situated employees who are not racial minorities were not demoted, suspended or disciplined in the way that Baltzer was.

(52) Non-minority employees at Heartland are permitted better job assignments, more lenient attendance and leave standards, less managerial scrutiny, less strict

disciplinary treatment, more opportunities for workplace networking and more physical access to the employment facilities.

(53) Tounsley's offensive comments and discipline of Baltzer were motivated by her race and constitute racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(54) Klouse's disciplinary actions, suspension and work assignments of Baltzer were related to her race and constitute racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(55) Christenson's disciplinary actions, work assignments, work limitations and termination of Baltzer were related to her race and constitute racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(56) Balzter was subjected to a hostile and intimidating work environment because of the racial animus of her co-workers and Heartland management which substantially interfered with her employment at Heartland.

(57) Heartland failed to enforce effective anti-discriminatory policies in the workplace in violation of Baltzer's federally protected employment rights.

(58) Baltzer lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of Heartland's actions.

(59) Baltzer's stress and health problems were a reasonably foreseeable result of Heartland's discriminatory treatment.

(60) Heartland's actions toward Baltzer were willful, reckless and malicious and in intentional disregard of Baltzer's federally protected employment rights.

## COUNT TWO:
## 42 USCA 2000e-3
## Retaliation

(61) Baltzer realleges paragraphs 1 through 60 of the Complaint herein.

(62) Baltzer formally complained to the owner of the company and a direct supervisor that she was being subjected to adverse and unequal treatment with respect to the terms and conditions of her employment because of her race.

(63) Baltzer's reports of racial discrimination and retaliation were exercising her federal protected right to oppose behavior which she reasonably believed to be a violation of Title VII of the Civil Rights Act of 1964 and 42 USCA 1981.

(64) Heartland acknowledged that Tounsely and Jungemann's comments about Native Americans were discriminatory.

(65) Heartland retaliated against Baltzer as a result of her reports and complaints of racial discrimination.

(66) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was demoted to her former job position.

(67) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was physically limited in where she could go within the workplace.

(68) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was subject to intimidation and told that she could not be protected from retaliatory behavior, including possible physical retaliation.

(69) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was given a limited work assignment and was not able to complete work

assignments involving the Accounting Department unless another employee would agree to help her.

(70) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was ostracized from employee activities.

(71) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer taunted about race by other employees.

(72) As a direct result of her complaint about unequal and unfair treatment based on race, Baltzer was suspended and disciplined.

(73) As a direct result of her complaint about unequal treatment and unfair based on race and retaliation, Baltzer was terminated.

(74) Heartland manufactured false and pretextual claims about Baltzer's attendance and performance.

(75) When Baltzer objected to being coerced into making a false statement about her own attendance, Baltzer was subject to further threats and retaliatory treatment from Christenson.

(76) Baltzer lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of Heartland's retaliatory actions.

(77) Baltzer's stress and health problems were a reasonably foreseeable result of Heartland's retaliatory treatment.

(78) Heartland's actions toward Baltzer were willful, reckless and malicious and in intentional disregard of Baltzer's federally protected employment rights.

10

## COUNT THREE:
## SDCL § 20-13-10
## Violation of South Dakota's Human Rights Laws

(79) Plaintiff realleges paragraphs 1 through 78 of this Complaint herein.

(80) Heartland's acts and omissions as set out herein constitute racial discrimination and retaliation in violation of South Dakota Codified Laws Chapter 20-13.

(81) Baltzer lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of Heartland's actions.

(82) Heartland's actions were willful, reckless and malicious and in intentional disregard of Baltzer's protected employment rights under South Dakota law.

WHEREFORE, Baltzer prays for judgment against Defendant as follows:

a. For a trial by jury on the merits of her claim;

b. For compensatory damages in such amount as the evidence at trial may show;

c. For damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq*, the Civil Rights Act of 1991, 42 USCA 1981, SDCL 20-13-10, and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d. For punitive damages in such an amount as the evidence at trial may show;

e. For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 28th day of December, 2007.

11

JOHNSON & EKLUND

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD 57533
Attorney for Plaintiff